UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KEVIN LEE HILTON,<br><br>                    Petitioner,<br><br>   v.<br><br>JAMES KEY,<br><br>                    Respondent. | NO. 2:16-CV-0383-TOR<br><br>ORDER DENYING PETITIONER'S<br>WRIT OF HABEAS CORPUS |

BEFORE THE COURT is Petitioner Kevin Lee Hilton's Petition for Writ of Habeas Corpus. ECF No. 1. Respondent James Key has answered the Petition and filed relevant portions of the state court record. ECF Nos. 15–23. The Court has reviewed the record and files herein, and is fully informed. For the reasons discussed below, Kevin Lee Hilton's Petition for Writ of Habeas Corpus (ECF No. 1) is **DENIED**.

## BACKGROUND

On October 31, 2016, Petitioner Kevin Lee Hilton filed a Petition for Writ of Habeas Corpus. Mr. Hilton, a prisoner at the Airway Heights Corrections Center,

is challenging his Benton County jury convictions for two counts of aggravated first degree murder. ECF Nos. 1 at 1; 16-1 at 2. The underlying facts and procedural history, summarized by the Washington Court of Appeals on direct appeal, are as follows:

> Lisa Ulrich discovered her parents' bodies in their Richland home shortly after 9:00 a.m. on March 21, 2002. Autopsies determined that they had been killed the evening before. There was no sign of forced entry. Both had been shot by a .45 caliber handgun.
>
> Five .45 caliber bullets were recovered from the victims and their house. Police discovered three .45 caliber "A-Merc" brand shell casings at the scene. Knowing the brand to be uncommon, a detective began investigating local gun shops to see which of them sold that ammunition and to whom.
>
> The Ulrichs were longtime landlords who owned seven residential rental properties in Richland at the time of their deaths. Clasped in Mr. Ulrich's hand was a yellow note folded to conceal a rent receipt for Kevin Hilton in the sum of $3,475, representing the total of several months of back rent he owed the Ulrichs. A file folder containing Mr. Hilton's rental documents was found on top of the couple's refrigerator. It contained a three-day, pay-or-quit notice dated March 15, 2002 directed to Mr. Hilton. The receipt book was missing, as was the kitchen telephone handset. The missing telephone had a caller identification (ID) feature. The caller ID feature on an upstairs telephone showed that the last telephone call had been from Kevin Hilton at 6:42 p.m. on March 20.
>
> Police contacted all of the Ulrichs' tenants on March 21 except for Mr. Hilton. Officers were able to make contact with him the next day; he invited them into his duplex. He explained his whereabouts on the night of the murder—he had shopped for groceries at Winco, returned the book Hard Time to the Richland library, and then gone to volleyball practice. He also told them that he owed the Ulrichs $3,475, but they had reached an agreement over the telephone on March 20th on a plan to pay the rent. Police also learned that Mr.

Hilton owned several rifles and engaged in competitive shooting events. He said he had previously owned four handguns, including two Norinco .45 caliber handguns. He said that he had sold one Norinco to Dirk Leach and the other to someone at a gun show in Walla Walla six to eight months earlier.

Police later served a search warrant on Mr. Hilton's duplex. They discovered some used .45 caliber A-Merc shell casings as well as receipts from Schoonie's Rod Shop for A-Merc .45 caliber ammunition. Testing determined that the shell casings had been fired from the same gun used to kill the Ulrichs. The murder weapon was never located.

The prosecutor ultimately filed two charges of aggravated first degree murder against Mr. Hilton. The case proceeded to jury trial in 2003. Mr. Hilton did not testify in that trial. The jury found him guilty as charged. He then appealed to this court.

This court determined that the search warrant for the duplex, which had uncovered the matching A-Merc shells, was invalid due to lack of specificity to guide officers in their search. Because the matching shells were very significant incriminating evidence, the convictions were reversed. *State v. Hilton*, No. 22116-4-III (Wash. Ct. App. Jan. 26, 2006), review denied, 158 Wn.2d 1027 (2007).

The case was scheduled for retrial ….

The State also moved in limine to prohibit the defense from accusing Lisa Ulrich of committing the murders. Defense counsel advised the court about numerous topics that Lisa Ulrich had been cross-examined about during the first trial and indicated that the defense intended to again cover those areas. He did not want the third party perpetrator ruling to limit those areas of inquiry. RP at 201-204. Defense counsel then concluded his argument:

> So, minimally, I think the court should allow what was allowed last time in terms of cross-examination. We don't characterize that as other party perpetrator evidence, and we're entitled to do it under the rules of cross-examination.

RP at 205. The trial court ruled that third party perpetrator evidence would be excluded ….

Although the receipts seized from Mr. Hilton's duplex and the matching casings had been suppressed, the prosecutor still sought to admit evidence that Mr. Hilton had purchased A-Merc .45 caliber bullets. The trial court ruled that the Schoonie's Rod Shop owner could testify and her records of the sales could be admitted at trial. The court reasoned that the evidence was admissible under either the inevitable discovery or independent source doctrines. Clerk's Papers (CP) at 26.

Unlike the first trial, Mr. Hilton testified on his own behalf in the second trial. Typically without objection, the prosecutor was permitted to question Mr. Hilton about the fact that he was familiar with the discovery and prior testimony. The prosecutor also argued in closing that Mr. Hilton had tailored his alibi testimony to fit the State's evidence.

The jury found Mr. Hilton guilty of both counts of first degree murder and also found that both offenses were committed with the aggravating factor that there were multiple killings committed as part of a common scheme or plan. He was sentenced to life in prison without possibility of parole. He then timely appealed to this court.

ECF No. 16-1 at 14–19 (Ex. 2).

The Washington Court of Appeals affirmed Petitioner's conviction and sentence on September 27, 2011. *Id.* at 63. Petitioner then filed a petition for review in the Washington Supreme Court. ECF No. 16-2 at 152 (Ex. 11). On April 27, 2012, the Washington Supreme Court denied review. ECF No. 17-1 at 30 (Ex. 13).

1    On September 18, 2013, Petitioner filed a personal restraint petition in the

2    Washington Court of Appeals.  *Id.* at 32 (Ex. 14).  On October 20, 2015, the

3    Washington Court of Appeals thoroughly addressed Petitioner's issues and

4    dismissed his personal restraint petition.  ECF No. 16-1 at 65 (Ex. 3).  Petitioner

5    then moved the Washington Supreme Court for discretionary review, which was

6    denied on November 2, 2016.  ECF No. 17-3 at 93 (Ex. 21).

7         Petitioner filed this federal 28 U.S.C. § 2254 habeas petition on October 31,

8    2016, generally alleging four grounds for relief:  (1) denial of due process for false

9    or misleading evidence and argument; (2) denial of due process in violation of

10   *Brady*; (3) ineffective assistance of counsel; and (4) denial of his constitutional

11   right to present a defense and due process.  ECF Nos. 1 at 2; 9 at 1–9.

12        This Court granted Petitioner's Unopposed Motion to Expand the Record.

13   ECF Nos. 35; 50.  Petitioner sought to conduct discovery and hold an evidentiary

14   hearing, specifically regarding Detective Simon Mantel's report.  ECF No. 36.

15   This Court denied the motion and thus will not consider Petitioner's argument for

16   an evidentiary hearing in this order.  ECF Nos. 51; 34 at 2–4.  This Court does not

17   consider evidence that was excluded as a matter of law from the second trial.  *See*

18   ECF No. 34 at 5.  The parties agree that Petitioner properly exhausted his state

19   court remedies.  ECF Nos. 15 at 15; 34 at 1.

20   //

# DISCUSSION

A court will not grant a petition for a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court proceedings unless the petitioner can show that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Section 2254(d) sets forth a "highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citation omitted).

## I.    Unreasonable Determination of the Facts

Petitioner disputes the facts recited in the state court proceedings. 28 U.S.C. § 2254, however, requires the Court to consider the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2); *see also* ECF No. 34 at 20. As to factual determinations, the Supreme Court has instructed that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). This means that evidence not presented to the state court may not be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if

the underlying factual determinations of the state court were reasonable. *See Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014) ("After *Pinholster*, a federal habeas court may consider new evidence only on de novo review, subject to the limitations of § 2254(e)(2).").  Two separate statutory subsections govern a federal court's review of state court factual findings:

> Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citation omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007).  Importantly, a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Schriro v. Landrigan*, 550 U.S. at 473.

Because the relationship between § 2254(d)(2) and (e)(1) is not entirely clear, the Supreme Court in *Wood v. Allen* granted certiorari to resolve the question, but in the end declined to address any interpretive difference and left the

issue for another day. 558 U.S. at 304–05 ("Because the resolution of this case does not turn on them, we leave for another day the questions of how and when § 2254(e)(1) applies in challenges to a state court's factual determinations under § 2254(d)(2)."). Other courts facing this issue have not found the differences between § 2254(d)(2) and (e)(1) necessarily determinative. *See e.g., Murray v. Schriro*, 745 F.3d at 1001 ("[W]e do not believe the difference between our two lines of cases is determinative in this case, and thus we need not resolve the apparent conflict to decide this case.").

Petitioner argues that this Court should not defer to the state court's factual findings because the state court's opinion relied on an unreasonable determination of the facts. *See* ECF No. 34 at 5–7. This Court addresses each of Petitioner's factual complaints below and finds that the state court's conclusions were not an unreasonable determination of facts.

For the most part, Petitioner contests disputed issues of fact that were presented to the jury, now looking at those facts and inferences from those facts in his favor. The jury rejected Petitioner's alibi defense and this Court cannot know which predicate facts were accepted, rejected or ignored by the jury in its collective determination of guilt. Petitioner complains that the countervailing evidence is relevant "when considering the strength of the state's case against Petitioner in comparison with the evidence against Lisa Ulrich – the evidence and

theory he was not permitted to present at trial." ECF No. 34 at 20. As discussed below, Petitioner is completely mistaken that he was not permitted to present this evidence and theory at trial, he chose to present a different theory and is not permitted to now construct an alternative closing argument on habeas.

This Court has already found that Detective Mantel's report is not material and thus Petitioner's factual contentions regarding the user initiated computer activity at 8:07 p.m. are moot. *See* ECF Nos. 51; 34 at 7–16. This Court considers the conflicting facts regarding DNA testing and waiver of the third party perpetrator defense in the second section of this Order. ECF No. 34 at 16–19.

This Court finds that the state court did not rely on an unreasonable determination that Mr. Hilton sold a .45 caliber handgun after the murders. *Id.* at 19–20. The state court remarked that a witness identified Mr. Hilton in court as the seller of a .45 caliber handgun and a .22 caliber rifle. Yet, the court also outlined Mr. Hilton's conflicting testimony that he sold his last .45 caliber handgun in 2001. ECF No. 16-1 at 74. While Petitioner argues that the witness was thoroughly discredited, this Court finds that the state court did not unreasonably determine the facts. The state court did not make a determination as to when Mr. Hilton sold his handgun, but merely stated that the jury disbelieved his alibi defense and found him guilty. ECF Nos. 16-1 at 74; 34 at 19.

1    While Petitioner debates the nuisances of "clasped" and "affixed" in regards

2    to the sticky note in Mr. Ulrich's hand, this Court finds that the state court's

3    description was reasonable.  ECF No. 34 at 20.  Petitioner argues that the

4    photographs better demonstrate the unusual position of the sticky note, illustrating

5    how Lisa Ulrich could have put the fake receipt in her father's hand to direct the

6    investigation towards Mr. Hilton.  *Id.*  After reviewing the photographs, *e.g.*, ECF

7    No. 49 at Trial Exhibits 83, 84, 103, this Court determines that the state court did

8    not make an unreasonable determination of the facts in its description of where the

9    sticky note was found.  Indeed, the defense argued to the jury that the note was

10   planted.  ECF No. 23-1 at 3850–53 (Ex. 57).  The jury heard the testimony and had

11   the photographs in evidence.  It was for the jury to decide the relevance of that note

12   and its location.

13   Petitioner claims the state court wrongly determined the receipt was "signed

14   by Josephine Ulrich" when another receipt in evidence shows someone traced over

15   Jo Ulrich's signature and Petitioner speculates that someone was practicing the

16   ability to copy her handwriting.  ECF No. 34 at 21; Trial Exhibit 1.  This Court

17   finds that the state court properly described the signature on the receipt.  Lisa

18   Ulrich testified to the jury that it was her mother's signature.  ECF No. 20-1 at

19   1307-10 (Ex. 39).  Again, the defense argued to the jury that in addition to the

20   evidence that the note was planted, there was evidence someone had been tracing

over somebody's handwriting in order to leave a false receipt. ECF No. 23-1 at 3884–85 (Ex. 57). In any event, all the receipts were admitted into evidence and the jury could decide the issue for themselves.

Additionally, Petitioner disputes the state court's characterization that the missing receipt book was kept "openly" on top of the refrigerator. ECF Nos. 34 at 21. The state court observed that "Jennifer and Lisa [Ulrich] both testified that the receipt book currently in use was kept openly on top of the refrigerator." ECF No. 17-2 at 211. Petitioner merely argues whether anything is kept openly on top of the refrigerator in a room separate from where visitors are permitted. ECF No. 34 at 21. This Court does not find Petitioner's contention persuasive when the openness of a book is not defined by the room it occupies. Petitioner fails to establish that the state court made an unreasonable determination in its description of the daughters' testimonies.

Accordingly, this Court finds that the state court's rejection of Petitioner's claims was not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

## II.     Unreasonable Application of Clearly Established Federal Law

A rule is "clearly established Federal law" within the meaning of section 2254(d) only if it is based on "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)

(quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)). A state court's decision is contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002) (internal quotation marks omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). The state court need not cite to the controlling Supreme Court precedent, nor need it even be aware of the relevant case law, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* "[A]n unreasonable application of" clearly established federal law is one that is "objectively unreasonable, not merely wrong; even clear error will not suffice." *White*, 134 S.Ct. at 1702 (internal quotation marks and citation omitted). Of utmost importance, circuit precedent may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam).

In order to obtain a writ of habeas corpus, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (quoting

*Harrington v. Richter*, 562 U.S. 86, 101 (2011)).  Under the harmless error standard of review adopted by the Supreme Court, even if a reviewing court finds constitutional error, the challenged error must have caused "actual prejudice" or had "substantial and injurious effect or influence" in determining the jury's verdict in order for the court to grant habeas relief.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted).

If [the section 2254(d)] standard is difficult to meet, that is because it was meant to be ….  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.  It goes no further.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.  *Harrington*, 562 U.S. at 102–03 (citations omitted).

The petitioner bears the burden of showing that the state court decision is contrary to, or an unreasonable application of, clearly established precedent.  *See Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011).  In conducting its habeas

review, a federal court looks "to the last reasoned decision of the state court as the basis of the state court's judgment." *Merolillo v. Yates*, 663 F.3d 444, 453 (9th Cir. 2011) (citation omitted).  A rebuttable presumption exists: "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

**Claim 1:  Denial of Due Process**

Petitioner contends that he was denied due process because the State presented false or misleading evidence and argument.  ECF Nos. 9 at 1; 34 at 21. "The principle that a State may not *knowingly* use false evidence … to obtain a tainted conviction, [is] implicit in any concept of ordered liberty." *Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959) (emphasis added).  To demonstrate a constitutional violation under *Napue*, Petitioner must show: "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material." *Sanders v. Cullen*, 873 F.3d 778, 794 (9th Cir. 2017).

First, Petitioner contends that the State presented false testimony regarding the timing of computer usage and the murder timelines because Detective Mantel's report found that "user initiated activity" on the Ulrichs' computer ended at 8:07 p.m.  ECF Nos. 16-1 at 76; 9 at 2–3.  This Court has already addressed this issue in

its Order Denying Petitioner's Motion for Discovery. ECF No. 51. This Court found that the state court's determination was reasonable when it determined that "user initiated activity" does not show that someone was physically on the Ulrichs' computer at 8:07 p.m. *Id.* at 7–8. The state court determined that "Mr. Hilton is unable to point to any false or misleading evidence or information that was relied on, secreted, or proffered by the State." ECF No. 16-1 at 95 (Ex. 3).

Regardless of whether someone was on the computer, it was reasonable for the state court to find that Mr. Hilton would still not be entitled to relief. *See* ECF Nos. 51 at 8; 16-1 at 23–31 (Ex. 3). This Court has already addressed that Detective Mantel's report does not make the State's theory impossible when the Ulrichs' murders occurred anywhere between 6:00 to 10:00 p.m. ECF Nos. 51 at 8; 16-1 at 88. This Court also notes that the State supplied Defense counsel with a copy of Detective Mantel's report before Mr. Hilton's first trial. ECF No. 16-1 at 76–77 (Ex. 3). The State did not conceal Detective Mantel's report from Petitioner nor is it clear that this information would have affected the jury's verdict where Mr. Hilton could have committed the murders within the four hour time span even if someone was physically operating the Ulrichs' computer at 8:07 p.m. Moreover, at trial, Petitioner testified from his internet service provider's records that he was at home using the internet at 5:42 p.m., 6:20 p.m., 7:41 p.m. and at 7:58 p.m. for nearly 12 minutes. ECF No. 23-1 at 3602–03, 3612 (Ex 55). The defense argued

this alibi to the jury in closing.  ECF No. 23-1 at 3882–83 (Ex. 57).  This Court finds that Petitioner fails to show that the State knowingly presented any false evidence material to the outcome of the trial.

Second, Petitioner argues that the State falsely asserted at trial that DNA testing excluded Lisa Ulrich as the source of DNA on the shell casings.  ECF No. 9 at 4.  At trial, but not before the jury, the State proposed to offer a 2008 DNA test excluding Lisa Ulrich as the source of DNA on the shell casings.  ECF Nos. 9 at 4; 16-1 at 95–96 (Ex. 3).  The State conceded that its offer of proof was mistaken and that it overstated the conclusions of the DNA report.  ECF No. 16-1 at 96.  In any event, the trial court excluded admission of the report because of its late disclosure to the defense.  *Id.*  The state appellate court emphasized that "[t]he offer of proof was not made in connection with any argument about the sufficiency of evidence to support a third party perpetrator theory."  *Id.*  The court stated that when determining the insufficiency of Mr. Hilton's third party perpetrator evidence in the second appeal, "no consideration was given to the possibility that DNA evidence that was never admitted might have cut against the theory."  *Id.*

This Court finds that the state appellate court's determination is reasonable and Petitioner fails to establish that the prosecution's error in any way affected the jury's decision or the appellate decisions.  This Court concludes that this error does not constitute false or misleading evidence that reasonably affected the jury's

verdict when the mistaken statement was not offered as evidence, merely an offer of proof, and was not mentioned to the jury. Moreover, the defense argued to the jury during closing that Petitioner's DNA was not found, only an unidentified female's DNA was found. ECF No. 23-1 at 3881 (Ex. 57).

Accordingly, as to Petitioner's claim that the state presented false and misleading evidence, this Court finds the state court's conclusions were neither an unreasonable determination of the facts nor an unreasonable application of the clearly established constitutional law as set forth by *Napue*.

### Claim 2: *Brady* Violation

Petitioner contends that he was denied due process when the State withheld exculpatory evidence regarding the timing of the computer usage in violation of *Brady v. Maryland*. ECF Nos. 9 at 4; 34 at 22. Respondent insists the state court reasonably rejected this claim because Detective Mantel's report was disclosed to the defense and the Fluckiger report was not material. ECF No. 15 at 32.

"A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused." *Youngblood v. W. Virginia*, 547 U.S. 867, 869 (2006) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). A court should find that evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks omitted). "To state a claim under *Brady*, the plaintiff must allege that (1) the withheld evidence was favorable either because it was exculpatory or could be used to impeach, (2) the evidence was suppressed by the government, and (3) the nondisclosure prejudiced the plaintiff." *Smith v. Almada*, 640 F.3d 931, 939 (9th Cir. 2011) (citation omitted). A *Brady* violation does not exist in a case in which the allegedly suppressed evidence is known by the defense. *See United States v. Dupuy*, 760 F.2d 1492, 1501 n.5 (9th Cir. 1985) ("Since suppression by the Government is a necessary element of a *Brady* claim, if the means of obtaining the exculpatory evidence has been provided to the defense, the *Brady* claim fails.") (citations omitted).

Here, Petitioner asserts that had trial counsel known of Mr. Fluckiger's confirmation of Detective Mantel's analysis, they would have interviewed Mr. Fluckiger and called him to testify at trial. ECF Nos. 9 at 6; 34 at 24. In December 2002, the prosecution asked a Kennewick police detective to provide Detective Mantel's work to J.D. Fluckiger of Battelle, a private company that manages a national laboratory for the U.S. Department of Energy in Richland. ECF No. 16-1 at 77 (Ex. 3). On February 4, 2003, the prosecution wrote a letter to defense counsel that his office was working with Battelle to see if its personnel might be able to review the hard drives and provide the testimony that would have

been provided by Detective Mantel.  *Id.*  There was no further mention of Mr.

Fluckiger and neither party called Mr. Fluckiger or Detective Mantel at either trial.

*Id.* at 78.  Mr. Fluckiger merely looked at Detective Mantel's presentation and

explained it to the prosecutor, in terms he could understand.  He stated that the

report was "fairly sound," but did not go into the EnCase files to determine what

was there.  *Id.*

The Washington Court of Appeals found that Mr. Hilton could not establish

that Mr. Fluckiger's assessment was material.  *Id.* at 84.  The court stated that "Mr.

Fluckiger could add nothing, because he did not examine the actual files in the

computer and did not look at the hard drive.  He did no analysis of his own and

never issued a report."  *Id.*  Yet, Petitioner contends that the state court

unreasonably applied the materiality test.  ECF No. 34 at 25.  Petitioner argues that

the question is whether "the favorable evidence could reasonably be taken to put

the whole case in such a different light as to undermine confidence in the verdict,"

not whether the remaining evidence is sufficient to support the jury's conclusion.

*Id.*; *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 304 (3d Cir.

2016) (citation omitted).

An opinion that Detective Mantel's report was "fairly sound" by someone

who did not review the actual files or hard drive does not constitute material

evidence in favor of Petitioner.  Even when viewing the case in light of the Third

Circuit standard as espoused by Petitioner, Mr. Fluckiger's assessment does not put the whole case in such a different light as to undermine confidence in the jury's verdict. Nondisclosure of Mr. Fluckiger's assessment does not undermine confidence in the outcome. Accordingly, this Court finds the state court's conclusions were neither an unreasonable determination of the facts nor an unreasonable application of the clearly established constitutional law as set forth by *Brady*.

### Claim 3: Ineffective Assistance of Counsel

A defendant in criminal proceedings has a constitutional right to effective assistance of counsel. U.S. Const. amend. VI. A defendant asserting violation of his constitutional right to effective assistance of counsel must demonstrate the following: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kimmelman v. Morrison*, 477 U.S. 365, 374–75 (1986) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). Regarding the first prong, a "tactical decision about which competent lawyers might disagree" does not qualify as objectively unreasonable. *Bell v. Cone*, 535 U.S. 685, 702 (2002). "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689.

Additionally, habeas courts must be deferential not only to the decisions of defense

counsel, but also to the decisions of the state courts as required under 28 U.S.C.

§ 2254(d)(1). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Here, Petitioner asserts that trial counsel was ineffective for failing to

investigate and present Detective Mantel's report. ECF No. 34 at 26. Petitioner

argues that the state court unreasonably applied the *Strickland* sufficiency of the

evidence test rather than the correct prejudice test. *Id.* Petitioner argues that

*Strickland*'s prejudice prong turns on whether there is a reasonable likelihood of a

different result from the missing evidence. *Id.* The state court found that "any

deficient performance by Mr. Hilton's lawyers did not rise to prejudice when the

premise that a person was physically present at the Ulrich's keyboard is purely

speculative." ECF No. 16-1 at 105. This Court has already determined that the

state court's finding on this issue was reasonable. *See* ECF No. 51.

This Court agrees that trial counsel's failure to introduce evidence of

Detective Mantel's report does not rise to the level of prejudice and the state court

properly applied *Strickland*. This Court finds that a reasonable probability does

not exist that, but for counsel's failure to investigate the Mantel report, the result of

the proceeding would have been different. The state court properly applied

*Strickland* when it found there was no prejudice because the physical presence of

someone on the Ulrichs' computer was merely speculative, meaning a different result is not reasonably likely. Giving deference to the state court as required in a habeas proceeding, this Court concludes that Petitioner was not prejudiced by any deficiency of counsel in regards to the Mantel report.

Additionally, Petitioner alleges that trial counsel intended to present a defense that Lisa Ulrich actually committed the murders, but their failure to make an adequate record to preserve the issue for appeal fell below the standard of reasonableness. ECF No. 9 at 8. Petitioner argues that trial counsels' failure to preserve this issue prejudiced Mr. Hilton by precluding the Washington Court of Appeals from considering the trial court's exclusion of this theory on direct appeal. He also argues that it prejudiced his personal restraint petition because the Washington Court of Appeals adhered to the conclusion that trial counsel never intended to present this theory. *Id.*

The state court found that Petitioner was not prejudiced by any performance or omissions of counsel with respect to the Lisa Ulrich third party perpetrator defense. ECF No. 16-1 at 109. Apparently as a tactical decision, the defense argued the deficiencies in the state's case rather than to prove Lisa Ulrich committed the crimes "because the case against her was so weak that it would have made the defense look desperate[.]". *Id*. at 37, 108–09. The court determined that Petitioner did not present additional and sufficient third party perpetrator evidence

for consideration by a jury.  *Id.*  Therefore, the state court concluded that Petitioner was unable show prejudice under *Strickland* given the lack of relevant, admissible third party perpetrator evidence.  *Id.* at 118.

This Court addresses Petitioner's fourth claim below and agrees with the state court that Petitioner was not prejudiced by any deficiency of trial counsel to preserve the third party perpetrator defense for appeal when the Washington Court of Appeals twice considered the merits of Petitioner's argument and found it insufficient.  Petitioner is unable to establish that there exists a reasonable probability that, but for counsel's error in not preserving the issue on appeal, the result of the proceeding would have been different where the Court of Appeals still considered the issue and found a lack of admissible evidence for this defense. Accordingly, this Court denies Petitioner's claim for ineffective assistance of counsel as the state court did not unreasonably apply clearly established federal precedent.

### Claim 4:  Right to Present a Defense

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotation marks and citation omitted).  While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote,

well-established rules of evidence permit trial judges to exclude evidence if its

probative value is outweighed by certain other factors such as unfair prejudice,

confusion of the issues, or potential to mislead the jury. *Holmes v. South Carolina*,

547 U.S. 319, 326 (2006). *Holmes* is the most recent and clearest Supreme Court

articulation of the right to introduce third-party perpetrator evidence. The Court

held that the Constitution permits judges "to exclude evidence that is

repetitive . . . , only marginally relevant or poses an undue risk of harassment,

prejudice, or confusion of the issues." *Holmes*, 547 U.S. at 326–27 (citation,

quotation and brackets omitted). The Supreme Court recognized the specific

application of this principle articulated in 41 C.J.S., Homicide § 216, pp. 56–58

and 40A Am. Jur. 2d, Homicide § 286, pp. 136–138 (1999):

> Evidence tending to show the commission by another person of the
> crime charged may be introduced by accused when it is inconsistent
> with, and raises a reasonable doubt of, his own guilt; but frequently
> matters offered in evidence for this purpose are so remote and lack
> such connection with the crime that they are excluded. . . [T]he
> accused may introduce any legal evidence tending to prove that
> another person may have committed the crime with which the
> defendant is charged . . . . [Such evidence] may be excluded where it
> does not sufficiently connect the other person to the crime, as, for
> example, where the evidence is speculative or remote, or does not
> tend to prove or disprove a material fact in issue at the defendant's
> trial.

The Court observed that the South Carolina Supreme Court adopted a rule

apparently intended to be of this type articulated as follows:

[E]vidence offered by accused as to the commission of the crime by another person must be limited to such facts as are inconsistent with his own guilt, and to such facts as raise a reasonable inference or presumption as to his own innocence; evidence which can have (no) other effect than to cast a bare suspicion upon another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible. . . . [B]efore such testimony can be received, there must be such proof of connection with it, such a train of facts or circumstances, as tends clearly to point out such other person as the guilty party.

*Holmes*, 547 U.S. at 328 (citing *State v. Gregory*, 198 S.C. 98, 104–05, 16 S.E.2d 532, 534–35 (1941)). In *Holmes*, however, the South Carolina Supreme Court radically changed and extended the rule, stating that "where there is strong evidence of [a defendant's] guilt, especially where there is strong forensic evidence, the proffered evidence about a third party's alleged guilt" may (or perhaps must) be excluded." *Holmes*, 547 U.S. at 329 (citing *Gregory*, 361 S.C. at 342, 605 S.E.2d at 24). The Supreme Court found this rule to be arbitrary in the sense that it does not rationally serve the end that the *Gregory* rule and other similar third-party guilt rules were designed to further. *Id*. at 331. The Court found the rule to violate a criminal defendant's right to have a meaningful opportunity to present a complete defense. *Id*.

Here, Petitioner asserts that the state court denied his constitutional right to present a defense when the court prohibited him from presenting his theory that Lisa Ulrich committed the murders. ECF Nos. 9 at 9; 34 at 27. That is not what

happened.  ECF No. 16-1 at 33 (Ex. 2) ("The initial problem with this approach is that he never attempted to make that argument in the trial court.").  On direct appeal, the Washington Court of Appeals further held:

> Here, defense counsel at trial objected to the State's motion in limine only to the extent that it could be read as limiting the cross-examination of Lisa Ulrich. Both in writing and orally to the trial court, defense counsel disclaimed any interest in pursuing a third party suspect theory. There was no offer of proof setting forth sufficient evidence to put forth the theory. The most that can be said is that the defense wanted to point out that the case against their client was no stronger than a case against Lisa Ulrich would be. CP at 626-627. That is not the same as arguing that she actually committed the murder.
>
> The defense did not want to actually blame Ms. Ulrich for her parents' murders at trial. The defense theory cannot now be amended to argue what it did not desire to argue before. The challenge to the trial court's in limine ruling on third party suspects was waived.
>
> \* \* \*
>
> The trial court properly allowed the defense wide scope to cross-examine Ms. Ulrich; there was little the defense was precluded from doing. Mr. Hilton was allowed to develop her alleged bias against him, to explore inconsistent testimony for memory lapses, and to inquire about supposedly suspicious behavior that evening. Mr. Hilton's counsel accomplished what he told the court prior to trial he wanted to accomplish.

ECF No. 16-1 at 34, 36 (Ex. 2).  Those rulings are fully borne out by the trial court record of the in limine hearing, ECF No. 18-1 at 198–210 (Ex. 31), Petitioner's

briefing to the trial court on this issue, ECF No. 17-2 at 928–34 (Ex. 17),[1] and the trial transcript of Lisa Ulrich's testimony on cross-examination, ECF 20-1 at 1326–73, 1379–81 (Ex. 39). Petitioner has not shown these determinations to be objectively unreasonable nor has he shown clear and convincing evidence to the contrary.

Petitioner argues that the evidence against Lisa Ulrich provides a circumstantial case at least as equally strong as the case against Mr. Hilton. ECF No. 34 at 33. Petitioner proceeds to outline his theory of the case as to Lisa Ulrich's motive, opportunity, ability, and framing of Mr. Hilton. *Id.* at 35–38. Petitioner argues that if the jury had heard his theory implicating Lisa Ulrich, there

---

[1] This reference to Petitioner's contemporaneous briefing to the trial court is more informative and places his argument and colloquy with the trial court in the proper light. Petitioner's repeated citation to his sanitized offer of proof, ECF No. 17-1 at 737–41 (Ex. 15), that was apparently constructed for his personal restraint petition, lacks context and the full legal brief in which those facts were proffered and misconstrues Petitioner's oral argument before the trial court. Furthermore, Petitioner's repeated citation to the offer of proof is divorced from the actual facts that were introduced and presented to the jury. It is not this Court's job to ferret out which facts were allowed and which were disallowed.

is a high probability that one juror would have entertained a reasonable doubt as to Mr. Hilton's guilt. *Id.* at 39.

In addition to finding that Petitioner waived this argument, the state court twice determined that even if Petitioner wanted to present this argument, he failed to present sufficient evidence to allow him to present this theory to the jury. ECF Nos. 16-1 at 34–36 (Ex. 2) (direct appeal); 16-1 at 106–09 (Ex. 3) (personal restraint petition). Even more, the state court found that it was highly unlikely trial counsel would have pursued this argument "because the case against her was so weak that it would have made the defense look desperate." *Id*. at 37, 109.

Based on the foregoing, this Court finds that the state court's rejection of Petitioner's claims was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, nor an unreasonable determination of the facts in light of the evidence that was presented in the state court proceeding. Thus, habeas relief is not warranted on these claims.

### III.     Certificate of Appealability

A petitioner seeking post-conviction relief under section 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a

constitutional right." *See* 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

This Court concludes that Petitioner is not entitled to a COA because he has not demonstrated that jurists of reason could disagree with this Court's resolution of his constitutional claims or could conclude that any issue presented deserves encouragement to proceed further.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) is **DENIED**.

2. Any appeal taken by Petitioner of this matter would not be taken in good faith as he fails to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is denied.

The District Court Executive is directed to enter this Order and Judgment accordingly, furnish copies to the parties, and **CLOSE** the file.

**DATED** March 13, 2018.



THOMAS O. RICE
Chief United States District Judge